1  WILKE FLEURY LLP
   GEORGE A. GUTHRIE (SBN 201263)
2  gguthrie@wilkefleury.com
   MELISSA M. EATON (SBN 349609)
3  meaton@wilkefleury.com
   621 Capitol Mall, Suite 900
4  Sacramento, California 95814
   Telephone:  (916) 441-2430
5
   Attorneys for Plaintiff Bloom Fresh International
6  Limited

7  PANITCH SCHWARZE BELISARIO &
   NADEL LLP
8  TRAVIS W. BLISS (pro hac vice forthcoming)
   tbliss@panitchlaw.com
9  AVA E. LUTZ (pro hac vice forthcoming)
   alutz@panitchlaw.com
10 Delaware Corporate Center
   1 Righter Parkway, Suite 220
11 Wilmington, DE 19803
   Telephone:  (302) 394-6030
12
   Attorneys for Plaintiff Bloom Fresh International
13 Limited

14            UNITED STATES DISTRICT COURT

15     EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

16

17 | BLOOM FRESH INTERNATIONAL LIMITED, | Case No. |
18 | | **COMPLAINT** |
   | Plaintiff, | |
19 | | |
   | v. | |
20 | | |
21 | JESSE SOLORIO; DEL SOL PRODUCE SALES, INC.; JESSE SOLORIO & SONS COLD STORAGE, INC.; CRESCENSIO A. | |
22 | MENA; and PATRICIO A. MENA,, | |
23 | Defendants. | |
24

25         Plaintiff Bloom Fresh International Limited ("Bloom Fresh" or "Plaintiff"), by and through

26 its undersigned counsel, brings this civil action seeking damages and injunctive relief against Jesse

27 Solorio, Del Sol Produce Sales, Inc., Jesse Solorio & Sons Cold Storage, Inc. (collectively, the

28 "Solorio Defendants") Patricio A. Mena, and Crescensio A. Mena (collectively, the "Mena

Defendants"), all of whom are collectively referred to herein as "Defendants." In support thereof, Bloom Fresh makes the following allegations based upon information or belief, except for allegations specifically pertaining to itself, which are based on personal knowledge.

## Nature of the Case

1.      This is an action for Patent Infringement, Trademark Infringement, Unfair Competition, and False Designation of Origin under the U.S. Patent Act, 35 U.S.C. §§ 163, 271, and related provisions, and under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

2.      Plaintiff Bloom Fresh International Limited ("Bloom Fresh") owns U.S. Patent No. PP21664 (the "Asserted Patent") covering the grapevine variety 'IFG 68-175' (the "Asserted Variety"). The grapes of the Asserted Variety are marketed and sold under the registered trademark **SWEET CELEBRATION**® (U.S. Trademark Registration No. 6259217, the "Asserted Trademark"), owned by Bloom Fresh.

3.      Upon information and belief, Defendants have illegally propagated, made, and used plants of the Asserted Variety; and have marketed, sold or offered for sale grapes of the Asserted Variety; and have marketed, sold, or offered to sell plants and/or grapes of the Asserted Variety under the **SWEET CELEBRATION**® Trademark without Bloom Fresh's authorization.

## The Parties

4.      Plaintiff Bloom Fresh is a private limited company organized under the laws of the United Kingdom, and headquartered in London, United Kingdom.

5.      Defendant Patricio A. Mena is an individual and resident of the State of California residing at 22660 Avenue 178, Porterville, California, 93257. Patricio A. Mena is the record owner of the property located at the intersection of Avenue 178 and Highway 65 in Porterville, California (the "Porterville Field Property"), within the Eastern District of California. Parcel information for 22660 Avenue 178 is attached hereto as Exhibit 1. The Porterville Field Property contains a vineyard of grapevines of the Asserted Variety, which have been specifically identified as **SWEET CELEBRATION**® grapevines (the "Vineyard").

6.      Defendant Crescensio A. Mena is an individual and resident of the State of California residing at 2023 N. Newcomb, Unit 1, Porterville, California, 93257. Upon information and belief,

1 Crescensio A. Mena and Patricio A. Mena (collectively, the "Mena Defendants") act in concert with

2 respect to the Vineyard by maintaining, cultivating, making, and leasing the grapevines.

3       7.      Defendant Jesse Solorio is an individual and resident of the State of California

4 residing at 710 Glenwood Street, Delano, California 93215. Pursuant to a written lease agreement

5 with Crescensio A. Mena, Jesse Solorio holds a one-year lease to cultivate and harvest grapes of the

6 Asserted Variety from the Vineyard, which were leased to Jesse Solorio under the **SWEET**

7 **CELEBRATION**® trademark name. Jesse Solorio cultivated those vines, harvested grapes, and

8 then offered those grapes for sale under the **SWEET CELEBRATION**® trademark.

9       8.      Defendant Del Sol Produce Sales, Inc. is a corporation formed and existing under the

10 laws of the State of California with an address of 710 Glenwood Street, Delano, California 93215.

11 Upon information and belief, Jesse Solorio operates and owns Del Sol Produce Sales, Inc.

12       9.      Defendant Jesse Solorio & Sons Cold Storage, Inc. is a corporation formed and

13 existing under the laws of the State of California with an address of 710 Glenwood Street, Delano,

14 California 93215. Upon information and belief, Jesse Solorio operates and owns Jesse Solorio &

15 Sons Cold Storage, Inc.

16       10.      Upon information and belief, Jesse Solorio, Del Sol Produce Sales, Inc., and Jesse

17 Solorio & Sons Cold Storage, Inc., (collectively, the "Solorio Defendants") are acting in concert to

18 cultivate and harvest grapes of the Asserted Variety from the Vineyard and to offer such grapes for

19 sale under the **SWEET CELEBRATION**® trademark.

20 **Jurisdiction and Venue**

21       11.      This action arises under the United States Patent Act, codified at 35 U.S.C. § 1 et

22 seq., and in particular, 35 U.S.C. §§ 161-163, 271, and 281-285; and the U.S. trademark laws,

23 codified at 15 U.S.C. § 1051 et seq.

24       12.      This Court has federal question jurisdiction over the subject matter of this action

25 under 15 U.S.C. § 1121; 28 U.S.C § 1331; and 28 U.S.C. § 1338.

26       13.      This Court has personal jurisdiction over Defendant Jesse Solorio because this

27 individual is a resident of this state, does business in this state and district, and because the actions

28 described herein took place in this state and in this district.

14.    This Court has personal jurisdiction over Defendant Del Sol Produce Sales, Inc. because it is incorporated in this state, does business in this state and district, and because the actions described herein took place in this state and in this district.

15.    This Court has personal jurisdiction over Defendant Jesse Solorio & Sons Cold Storage, Inc. because it is incorporated in this state, it does business in this state and district, and because the actions described herein took place in this state and in this district.

16.    This Court has personal jurisdiction over Defendant Crescensio A. Mena because this individual is a resident of this state, does business in this state and district, and because the actions described herein took place in this state and in this district.

17.    This Court has personal jurisdiction over Defendant Patricio A. Mena because this individual is a resident of this state, does business in this state and district, and because the actions described herein took place in this state and in this district.

18.    Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) and (c) because the facts giving rise to the claims alleged herein occurred in this judicial district.

**Bloom Fresh's Intellectual Property Rights**

19.    Bloom Fresh is the owner of intellectual property rights covering its proprietary fruit plant varieties, including but not limited to the grapevine variety 'IFG 68-175' (the "Asserted Variety"), which is protected by U.S. Patent No PP21664 (the "Asserted Patent").

20.    Bloom Fresh possesses all rights under the Asserted Patent, including the right to sue for infringement, recourse for damages, and to seek injunctive relief.  A true and correct copy of the Asserted Patent is attached as Exhibit 2.

21.    The grapes of the Asserted Variety are marketed and sold under the registered trademark **SWEET CELEBRATION**® (U.S. Trademark Registration No. 6259217, the "Asserted Trademark"), which is owned by Bloom Fresh.

22.    The Asserted Trademark is distinctive and protectable.  Bloom Fresh possesses all rights under the Asserted Trademark, including the right to sue for infringement, recourse for damages, and to seek injunctive relief. A true and correct copy of U.S. Trademark Registration No. 6259217 for the Asserted Trademark is attached as Exhibit 3.

23.     Bloom Fresh only licenses the rights associated with the Asserted Patent and Asserted Trademark to certain growers to permit such licensed growers to cultivate grapevines of the Asserted Variety and to produce, market, and sell grapes of the Asserted Variety under the Asserted Trademark.  Bloom Fresh closely controls the growers in California that are licensed to possess and use the Asserted Variety and access to the Asserted Variety by anyone other than a licensed grower.

24.     Bloom Fresh does not sell grapevine plants of the Asserted Variety to the public. The only persons or entities authorized to possess grapevine plants of the Asserted Variety are licensed growers who receive such plants directly from Bloom Fresh.

25.     Bloom Fresh retains exclusive ownership rights in all grapevine plants of the Asserted Variety.  Licensed growers are granted only limited rights to cultivate and harvest fruit under strict license terms; they do not acquire ownership rights in the underlying grapevine plants themselves.

26.     Bloom Fresh requires that any licensed grower cultivates grapevines of the Asserted Variety in a location and a manner that limits access of any member of the public to the Asserted Variety.  This includes requiring licensed growers to take steps to protect against access by the public, including adequate security measures, such as fencing around the property, gates on access points, and restricting access of the public to the area where the Asserted Variety is being grown.

27.     Accordingly, any person or entity in possession of grapevine plants of the Asserted Variety is either an authorized licensee of Bloom Fresh, acting pursuant to rights expressly granted by Bloom Fresh, or in unlawful possession of such plants, having obtained them through unauthorized propagation, grafting, cutting, or other illegal means.

28.     Bloom Fresh has spent considerable resources developing and promoting its proprietary fruit plant varieties and associated trademarks, including the Asserted Patent and the Asserted Trademark, which are among Bloom Fresh's most valuable assets.

### Defendants' Infringing Activities

29.     Upon information and belief, on or about August 20, 2025, Bloom Fresh learned that the Solorio Defendants had offered grapes for sale under the **SWEET CELEBRATION**®

trademark to a Bloom Fresh licensed marketer.  The Solorio Defendants were not authorized to possess grapevines of the Asserted Variety or to market, offer for sale, or sell grapes under the Asserted Trademark.  Upon information and belief, the grapes offered for sale were harvested or would be harvested from the Vineyard on the Porterville Field Property.

30.    On January 18, 2025, Jesse Solorio entered a one-year lease with Crescensio A. Mena to use and cultivate **SWEET CELEBRATION**® grapes from the Vineyard on the Porterville Field Property.  A copy of the lease is attached as Exhibit 4.  The lease expressly uses Bloom Fresh's registered trademark, **SWEET CELEBRATIO**N®.  The second line of text centered on the top of the lease states: "Uvas Sweet Celebration" ("uvas" translates to "grapes" in English).  Under the lease, Jesse Solorio paid twelve thousand dollars in cash in exchange for the right to cultivate and harvest fifteen acres of **SWEET CELEBRATION**® red grapes for one year.

31.    Jesse Solorio represented to a Bloom Fresh licensed marketer that he had leased fifteen acres of **SWEET CELEBRATION**® vines from Crescensio A. Mena.

32.    Upon information and belief, the Vineyard comprises fifteen acres of grapevine plants of the Asserted Variety.

33.    Upon information and belief, Jesse Solorio entered the lease with Crescensio A. Mena on behalf of Del Sol Produce Sales, Inc. and Jesse Solorio & Sons Cold Storage, Inc.  Upon information and belief, the "Solorio Defendants" are acting in concert to cultivate and harvest grapes of the Asserted Variety from the Vineyard and offer these grapes for sale under the Asserted Trademark.

34.    Upon information and belief, the vines of the Asserted Variety growing in the Vineyard are approximately eight years old.

35.    Patricio A. Mena is the record owner of the Porterville Field Property.  Upon information and belief, Patricio A. Mena and Crescensio A. Mena made and used grapevine plants of the Asserted Variety in connection with leasing the Vineyard to Jesse Solorio.  The lease expressly references "Sweet Celebration" grapes, thereby acknowledging and utilizing Bloom Fresh's **SWEET CELEBRATION**® trademark and grapevines and grapes of the Asserted Variety.

36.    Neither the Solorio Defendants nor Mena Defendants are licensed growers

authorized by Bloom Fresh.

37.     The Defendants refer to the grapevines and/or grapes as **SWEET CELEBRATION®**, the trademark name used by Bloom Fresh in reference to the Asserted Variety, which constitutes a tacit admission that the grapevines and/or grapes are of the Asserted Variety.

38.     The plants and grapes from the Vineyard at the Porterville Field Property are phenotypically identical to the Asserted Variety.  Grapevine plants of the Asserted Variety are characterized by producing uniform, naturally large, round to oval, bright red seedless grapes. Visual inspection of grapevine plants growing at the Vineyard demonstrates that the plants exhibit the characteristics described in the Asserted Patent, including grape size, and uniformity of grapes. Further, taste testing of grapes harvested from the Vineyard exhibit the flavor characteristics of the Asserted Variety, including sugar content (Brix).

39.     Independent DNA testing (SSR marker analysis) of a sample of a grapevine plant obtained from the Vineyard indicated that the plant is of the Asserted Variety, 'IFG 68-175'. Because the 'IFG 68-175' variety can only be reproduced asexually from an existing plant of that variety, the plants of the Asserted Variety at the Vineyard were necessarily asexually reproduced from the patented variety.

40.     Upon information and belief, Defendants have asexually reproduced grapevine plants of the Asserted Variety by taking cuttings from plants protected by the Asserted Patent and grafting those cuttings onto rootstock (referred to as asexual reproduction by grafting).  Visual inspection of plants growing at the Vineyard reveals visible graft lines, which demonstrates that these plants were asexually reproduced by grafting.  Again, because the 'IFG 68-175' variety can only be reproduced asexually from a plant of the patented variety, the grafted (asexually reproduced) plants of the Asserted Variety growing at the Vineyard are necessarily progeny of the patented plant variety.  Defendants have marketed, offered for sale, and sold grapes harvested from such asexually reproduced plants under the Asserted Trademark.  These activities constitute infringement of both Bloom Fresh's Asserted Patent and Asserted Trademark.

41.     As Defendants are not a licensee of Bloom Fresh, upon information and belief, the grapevine plants and/or grapes that Defendants made, used, cultivated, and offered for sale were

illegally propagated in the United States by Defendants in violation of 35 U.S.C. § 163. Plants of the Asserted Variety could not have been obtained legally by Defendants, as such plants are not available to anyone other than licensed growers anywhere in the world. Accordingly, any plant in Defendants' possession must have been illegally propagated. Defendants' use, cultivation, and offer for sale of such plants and/or grapes further constitute patent infringement under 35 U.S.C. §§ 163 and 271.

42.    Upon information and belief, Defendants have misappropriated, converted, or otherwise illegally obtained plant material of the Asserted Variety; have propagated, made, cultivated, and used grapevines of the Asserted Variety; have marketed, sold, or offered for sale grapes of the Asserted Variety; and have marketed, sold, or offered for sale grapevines and/or grapes under the **SWEET CELEBRATION**® Trademark without Bloom Fresh's authorization.

43.    Upon information and belief, the Mena Defendants knew that the grapevine plants they made, which comprise the Vineyard on the Porterville Field Property, were of the Asserted Variety. Their knowledge is evidenced by the lease with Jesse Solorio, which expressly references "Sweet Celebration" red grapes—the trademark name used by Bloom Fresh for the Asserted Variety.

44.    Upon information and belief, the Solorio Defendants knew that the grapevines comprising the fifteen acres of the Vineyard were of the Asserted Variety. The lease with Crescensio A. Mena expressly references **SWEET CELEBRATION**® red grapes, and the Solorio Defendants subsequently attempted to market and sell the grapes under the **SWEET CELEBRATION**® name—the trademark name used by Bloom Fresh for the Asserted Variety. These actions demonstrate that the Defendants believed and understood the grapevine plants to be the Asserted Variety.

45.    Upon information and belief, Defendants had actual and constructive knowledge of the Asserted Patent and Asserted Trademark, and the infringement of these patent and trademark rights was willful.

46.    Defendants' infringing actions will divert customers away from legitimate, authorized sources of grapes of the Asserted Variety, thereby causing Bloom Fresh harm in the form

of lost sales, market dilution, and reputational injury.

47. Upon information and belief, Defendants' use of **SWEET CELEBRATION**® in connection with the grapes of the Asserted Variety will create a likelihood of confusion by consumers and/or cause actual confusion by consumers regarding the source of the goods.

48. Defendants are growing grapevines of the Asserted Variety in a location and manner that does not adequately restrict access to the Asserted Variety, thereby allowing for further dissemination of the Asserted Variety to unlicensed growers. This risk of further dissemination of the Asserted Variety to the public has caused, and continues to cause, irreparable harm to Bloom Fresh.

## COUNT I

### Infringement of U.S. Patent No. PP21664

49. Bloom Fresh hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

50. The claim of U.S. Patent No. PP21664 is presumed valid pursuant to 35 U.S.C. § 282.

51. Upon information and belief, Defendants have infringed claim 1 of U.S. Patent No. PP21664, in violation of at least 35 U.S.C. §§ 163 and 271, by:

    (a) asexually reproducing, propagating, making, cultivating, and using grapevine plants of the 'IFG 68-175' variety without license or authority;

    (b) marketing, selling, or offering for sale asexually reproduced grapevine plants of the 'IFG 68-175' variety without license or authority;

    (c) harvesting, using, and distributing grapes of asexually reproduced grapevine plants of the 'IFG 68-175' variety without license or authority; and

    (d) marketing, offering for sale, and selling grapes of asexually reproduced grapevine plants of the 'IFG 68-175' variety without license or authority.

52. Upon information and belief, Defendants acted and are continuing to act with actual and constructive knowledge of U.S. Patent No. PP21664 and willfully infringing U.S. Patent No. PP21664.

53.     As a result of Defendants' willful infringement of U.S. Patent No. PP21664, Bloom Fresh has been damaged to an extent not yet determined.

54.     Bloom Fresh is entitled to monetary damages adequate to compensate it for infringement by Defendants of U.S. Patent No. PP21664, together with trebling of damages, interest, costs, and attorneys' fees.

55.     Bloom Fresh has been and will continue to be irreparably injured by Defendants' conduct.  Bloom Fresh has no adequate remedy at law.  Bloom Fresh is entitled to injunctive relief prohibiting the Defendants from further infringing U.S. Patent No. PP21664.

## COUNT II

### Federal Trademark Infringement

### 15 U.S.C. § 1114

56.     Bloom Fresh hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

57.     This claim is brought under 15 U.S.C. § 1114.

58.     Bloom Fresh has continuously and exclusively used the **SWEET CELEBRATION**® Trademark in the United States since at least September 2008.

59.     Bloom Fresh owns U.S. Trademark Registration Number 6259217 for the **SWEET CELEBRATION**® trademark.

60.     U.S. Trademark Registration Number 6259217 is valid, subsisting, and in full force and effect.

61.     Bloom Fresh's use and registration of the **SWEET CELEBRATION**® trademark, in commerce in the United States for fruits and live plants, is prior to any date upon which Defendants could rely as the first date on which Defendants used the same mark on the same products within the same industry.

62.     Without authorization, Defendants expressly used the **SWEET CELEBRATION**® trademark in the January 18, 2025, lease for the Vineyard. Such use of Bloom Fresh's registered trademark in a commercial lease agreement is an unauthorized use in commerce and constitutes trademark infringement.  The lease specifically references "Uvas Sweet Celebration," thereby

acknowledging and representing the Vineyard as consisting of **SWEET CELEBRATION**® grapevines of the Asserted Variety. Defendants' use of the **SWEET CELEBRATION**® mark in this manner was intended to identify, market, and confer value upon the Vineyard and the grapes produced there, and demonstrates Defendants' knowledge of, and willful infringement of, Bloom Fresh's trademark rights.

63.    Defendants offered for sale grapes of the 'IFG 68-175' variety under the **SWEET CELEBRATION**® trademark. Such use of the **SWEET CELEBRATION**® trademark in commerce, in connection with the sale of the same products in the same industry, is likely to confuse, mislead, and deceive members of the public into believing that Bloom Fresh has authorized, sponsored, approved, or licensed Defendants' products, or that Defendants are affiliated with or connected to Bloom Fresh.

64.    Any such confusion would result in injury or have a direct impact on Bloom Fresh's reputation and its ability to market its own grapes under its **SWEET CELEBRATION**® trademark. Also, any defect, objection, or fault found with the Defendants' grapes would negatively impact and seriously injure the reputation Bloom Fresh has established for the grapes it sells under the **SWEET CELEBRATION**® trademark.

65.    The Defendants' activities are being carried out willfully, with constructive and actual knowledge of Bloom Fresh's **SWEET CELEBRATION**® trademark.

66.    The Defendants are liable for infringement of Bloom Fresh's federally registered mark, **SWEET CELEBRATION**®, in violation of 15 U.S.C. § 1114.

67.    Bloom Fresh is entitled to recover damages in an amount to be determined at trial, including profits made by Defendants on their sales of infringing products, and the costs of this action; also, because Defendants' activities are willful, this is an exceptional case entitling Bloom Fresh to recover treble damages and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

68.    Bloom Fresh has been and will continue to be irreparably injured by the Defendants' conduct. Bloom Fresh cannot be adequately compensated for these injuries by monetary remedies alone, and Bloom Fresh has no adequate remedy at law for the Defendants' infringement of its rights. Bloom Fresh is therefore entitled to injunctive relief against the Defendants pursuant to 15

U.S.C. § 1116(a).

## COUNT III

### False Designation of Origin

### 15 U.S.C. § 1125(a)(1)(A)

69.     Bloom Fresh hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

70.     This claim is brought under 15 U.S.C. § 1125(a)(1)(A).

71.     Bloom Fresh has continuously and exclusively used the **SWEET CELEBRATION**® trademark in the United States since at least September 2008.

72.     The **SWEET CELEBRATION**® trademark is distinctive and commercially strong.

73.     Bloom Fresh's use and registration of the **SWEET CELEBRATION**® trademark, in commerce in the United States for fruits and live plants, is prior to any date upon which any Defendants could rely as the first date on which Defendants used the same marks on the same products within the same industry.

74.     Without authorization, Defendants used the **SWEET CELEBRATION**® trademark in commerce in connection with grapes and grapevine plants of the 'IFG 68-175' variety, including in the January 18, 2025, lease for the Vineyard and in offering grapes for sale to a Bloom Fresh licensed distributor. Such uses are likely to confuse, mislead, and deceive members of the public into believing that Bloom Fresh is the source of the grapes or grapevine plants sold by Defendants, or that Plaintiff is otherwise associated with Defendants.

75.     Any such confusion would result in injury or have a direct impact on Plaintiff's reputation and its ability to market its own grapes under its **SWEET CELEBRATION**® trademark. In addition, any defect, objection, or fault found with Defendants' grapes or grapevines would negatively impact and seriously injure the reputation Bloom Fresh has established for the grapes it sells under its **SWEET CELEBRATION**® trademark.

76.     Defendants' activities are being carried out willfully, with constructive and actual knowledge of Plaintiff's **SWEET CELEBRATION**® trademark.

77.     Defendants are liable for false designation of origin in violation of 15 U.S.C. §

1    1125(a)(1).

2        78.    Bloom Fresh is entitled to recover damages in an amount to be determined at trial,

3    including profits made by Defendants on its sales of the infringing products, and the costs of this

4    action; also, because Defendants' activities are willful, this is an exceptional case entitling Bloom

5    Fresh to recover treble damages and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

6        79.    Bloom Fresh has been and will continue to be irreparably injured by Defendants'

7    conduct.  Bloom Fresh cannot be adequately compensated for these injuries by monetary remedies

8    alone, and Bloom Fresh has no adequate remedy at law for Defendants' infringement of its rights.

9    Bloom Fresh is therefore entitled to injunctive relief against Defendants pursuant to 15 U.S.C. §

10   1116(a).

11                              **COUNT IV**

12                          **Unfair Competition**

13                      **15 U.S.C. § 1125(a)(1)(B)**

14       80.    Bloom Fresh hereby adopts and incorporates by reference the allegations set forth in

15   the preceding Paragraphs as though fully pleaded herein.

16       81.    This claim is brought under 15 U.S.C. § 1125(a)(1)(B).

17       82.    Upon information and belief, Defendants have made commercial statements,

18   representations, and marketing communications that their grapes are **SWEET CELEBRATION**®

19   grapes of the 'IFG 68-175' variety implying that they were legitimately authorized to sell such fruit.

20   These misrepresentations include, without limitation, the January 18, 2025, lease for the Vineyard,

21   which expressly referenced "Uvas Sweet Celebration," and Defendants' subsequent offer to sell

22   grapes under the **SWEET CELEBRATION**® trademark to a Bloom Fresh licensed distributor.

23   These representations are likely to mislead, confuse, or deceive consumers regarding the true nature,

24   characteristics, and source of Defendants' products.

25       83.    Defendants' statements are deceiving and/or have the capacity to deceive a

26   substantial segment of potential consumers of the parties' products.

27       84.    Defendants' deception is material, in that it is likely to influence the consumer's

28   purchasing decision.

85.    Defendants are liable for unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B).

86.    Bloom Fresh will be and/or has been and will continue to be irreparably injured by Defendants' conduct.  Moreover, Bloom Fresh cannot be adequately compensated for these injuries by monetary remedies alone, and Bloom Fresh has no adequate remedy at law for Defendant's infringement of its rights.  Bloom Fresh is therefore entitled to injunctive relief against Defendants pursuant to 15 U.S.C. § 1116(a).

**PRAYER FOR RELIEF**

Plaintiff Bloom Fresh prays for relief as follows:

(a)    That judgment be entered in favor of Plaintiff on all causes of action set forth herein.

(b)    That a finding be made that Defendants' infringement was willful.

(c)    That Defendants, their officers, directors, principals, agents, servants, and all those in privity or acting in concert or participation with Defendants, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

    i.    making, using, offering to sell, selling, distributing, importing, or otherwise exploiting any plants, fruit, or plant material protected by U.S. Patent No. PP21664;

    ii.    using, in any manner, or holding themselves out as having rights to use U.S. Patent No. PP21664;

    iii.    using, in any manner, or holding themselves out as having rights to use, the **SWEET CELEBRATION**® Trademark, and any confusingly similar variations on or in conjunction with any live plants, fruit, or related products;

    iv.    engaging in any course of conduct likely to cause confusion, deception or mistake with Plaintiff's trademarks, or otherwise cause damage or injury to Plaintiff's business, reputation, trademarks and their goodwill; or

    v.    otherwise unfairly competing with Plaintiff.

(d)    That the Court order the destruction, at Defendants' expense, of:

i.    All fruit on or obtained from plants of the Asserted Variety over which Defendants have possession, custody, or control, including but not limited to the plants located at the Porterville Field Property.  Before such destruction takes place, Defendants will provide Bloom Fresh with at least 48 hours' notice of the time and place at which such destruction will take place and will permit one or more representatives of Bloom Fresh to witness and take photographic/videographic evidence of such destruction.  In the event Bloom Fresh is unable to have a representative witness such destruction, Defendants will provide Bloom Fresh with any written and photographic evidence of the destruction of such fruit requested by Bloom Fresh

ii.    All plants of the Asserted Variety over which Defendants have possession, custody, or control, including but not limited to the plants located at the Porterville Field Property.  Before such destruction takes place, Defendants will provide Bloom Fresh with at least 48 hours' notice of the time and place at which such destruction will take place and will permit one or more representatives of Bloom Fresh to witness and take photographic/videographic evidence of such destruction.  In the event Bloom Fresh is unable to have a representative witness such destruction, Defendants will provide Bloom Fresh with any written and photographic confirmation of the destruction of such plants requested by Bloom Fresh.

(e)    That the Court order Defendants to provide Plaintiff with a full and complete sworn accounting of:

i.    the number of infringing grapevines planted, grown, propagated, sold, leased, transferred, or otherwise disposed of;

ii.    the total quantity of infringing fruit harvested, sold, distributed, stored, or otherwise disposed of, including dates and locations of harvest and sales;

iii.    all revenues, profits, and other financial benefits derived, directly or indirectly, from the unauthorized use, propagation, or sale of plants, parts of

plants, or fruit of the IFG 68-175 variety and/or from use of the **SWEET CELEBRATION**® Trademark; and

iv.   the destruction or other disposition of all infringing vines, fruit, and related materials, including supporting documentation.

v.   all plants of the Asserted Variety and any other plant varieties owned by Bloom Fresh that are currently or have ever been in the possession, custody, or control of Defendants, including but not limited to control by any lease, and including but not limited to the plants located at the Porterville Field Property.  Such accounting shall include the number or acreage of such plants, the location (by address or GPS coordinates) of such plants, and the length of time such plants have been or were in in the possession, custody, or control of Defendants.

vi.   An accounting of all fruit harvested at any time by Defendants or any person or entity controlled or directed by Defendants from any plants of the Asserted Variety and any other plant varieties owned by Bloom Fresh, including but not limited to the plants located at the Porterville Field Property.  Such accounting shall include, to the extent it is known or can be reasonably ascertained by Defendants, the date(s) of harvest, the volume harvested, and the disposition of such fruit, including any person or entity to which any of it has been sold, the date of sale, the volume sold, and the price obtained.

vii.   All information regarding the source and/or owner of any such plants of the Asserted Variety and any other plant varieties owned by Bloom Fresh which have ever been in the possession, custody or control of Defendants, including but not limited to the plants located at the Porterville Field Property.

(f)   That the Court issue an Order directing any other relief that the Court may deem appropriate to prevent the public from deriving any erroneous impression that any products offered by Defendants are authorized by Plaintiff or are in any way related to Plaintiff and its products.

(g)    That the Court issue an Order directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

(h)    That the Court issue an Order directing Defendants to file with the Court and serve on Plaintiff a full and complete accounting of all monies received by Defendants as a result of the sale of products protected by U.S. Patent No. PP21664 and/or the **SWEET CELEBRATION®** Trademark.

(i)    That in accordance with 35 U.S.C. §§ 284 and 285 and 15 U.S.C. §§ 1114 and 1117, Plaintiff be awarded monetary damages sufficient to recover Defendants' improper profits, and all damages suffered by Plaintiff, including a trebling of damages and an award of attorney's fees and costs due to the exceptional nature of this case; and further, that pursuant to 15 U.S.C. § 1117(c), Plaintiff be awarded statutory damages for Defendants' use of counterfeit versions of the **SWEET CELEBRATION®** Trademark, including up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, together with prejudgment interest, attorneys' fees, and costs.

(j)    For such other and further relief as the Court may deem just and proper.

Dated: Respectfully submitted,

DATED:  October 2, 2025          WILKE FLEURY LLP

By:    _George Guthrie_

GEORGE A. GUTHRIE
Attorneys for Plaintiff Bloom Fresh International Limited

# EXHIBIT 1



# EXHIBIT 2

(12) **United States Plant Patent**     (10) **Patent No.:**     **US PP21,664 P3**

Cain     (45) **Date of Patent:**     **Jan. 25, 2011**

(54) **GRAPEVINE 'IFG 68-175'**

(50) Latin Name:    ***Vitis vinifera***
Varietal Denomination:    **IFG 68-175**

(75) Inventor:    **David Cain**, Bakersfield, CA (US)

(73) Assignee:    **International Fruit Genetics**,
Bakersfield, CA (US)

( * ) Notice:    Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/455,739**

(22) Filed:    **Jun. 5, 2009**

(65)    **Prior Publication Data**

US 2010/0313316 P1    Dec. 9, 2010

(51) **Int. Cl.**
***A01H 5/00***    (2006.01)

(52) **U.S. Cl.** .................................................... **Plt./205**

(58) **Field of Classification Search** ................... Plt./205
See application file for complete search history.

*Primary Examiner*—Annetta H Para
(74) *Attorney, Agent, or Firm*—Townsend and Townsend and
Crew LLP

(57)    **ABSTRACT**

This invention is a new and distinct grapevine variety denomi-
nated 'IFG 68-175'. 'IFG 68-175' is characterized by produc-
ing large bright red, crisp, uniform berries with high sugar
content borne on medium size clusters. The fruit ripen and are
commercially harvestable from late August to mid-Septem-
ber. Berries color fully even under adverse conditions and do
not darken excessively throughout the harvestable period.

**1 Drawing Sheet**

---

**1**

Latin name of the genus and species of the plant claimed:
*Vitis vinifera.*
Variety denomination: 'IFG 68-175'.

BACKGROUND OF THE INVENTION

The new and distinct grapevine described and claimed
herein originated from a hand pollinated cross of the Redg-
lobe variety (U.S. Plant Pat. No. 4,787 expired) and the Prin-
cess variety (non-patented) performed in May 2001. The
seeds were subsequently germinated and the resulting plants
were planted in the field in April 2002. The present variety of
grapevine was selected as a single plant in August 2003 and
was first asexually propagated by hardwood cuttings in
December 2003. The resulting propagules were planted dur-
ing April 2004 near Delano, Kern County, Calif. and were
found to reproduce true-to-type through at least three genera-
tions of asexual reproduction. Further, the variety was asexu-
ally reproduced at a research facility near Delano, Kern
County, Calif.

BRIEF SUMMARY OF THE INVENTION

The new grapevine 'IFG 68-175' is characterized by pro-
ducing naturally large, round to oval red seedless berries
which ripen in mid-season near the end of the Flame Seedless
variety and before the Crimson variety. Berries have crisp
texture, excellent eating quality and are able to develop bright
red skin color more readily that existing commercial variet-
ies. It does not require extensive leaf removal or ethrel appli-
cations to color properly. The desirable bright red skin color
does not darken significantly as sugar levels increase.
To the inventor's knowledge, the known varieties to which
the new grapevine variety is most similar are the Sheegene-6
variety (U.S. Plant Pat. No. 19,041), the Sheegene-1 and the
90-3618 variety (U.S. Plant Pat. No. 17,211). 'IFG 68-175'
can be distinguished from the Sheegene-6 variety by ripening

**2**

later (late August to early September as opposed to late July to
early August for Sheegene-6), by having a more crisp flesh
texture and somewhat smaller cluster size. 'IFG 68-175' has
a V shaped petiolar sinus while Sheegene-6 has a U shaped
petiolar sinus. The 'IFG 68-175' variety can be distinguished
from the Sheegene-1 variety by ripening somewhat earlier
(late August as opposed to mid September for Sheegene-1).
'IFG 68-175' has a more round berry shape than Sheegene-1
and it has a more firm, crisp texture. The 'IFG 68-175' variety
can be distinguished from the '90-3618' variety by having a
brighter, more desirable red color as opposed to a darker
purple red color described for '90-3618'. 'IFG 68-175' has a
V shaped petiolar sinus while '90-3618' has a U shaped
petiolar sinus. Average berry weight of 'IFG 68-175' is some-
what smaller than '90-3618'. The new variety 'IFG 68-175'
thus distinguishes itself from other grape varieties based on a
unique combination of characteristics, which include natu-
rally large crisp, very uniform berries with both high visual
attractiveness and high eating quality combined with viticul-
tural characteristics that reduce growing costs. 'IFG 68-175'
can further be distinguished based on the characteristics
described below.

BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying photographic illustration in FIG. **1**
illustrates in full color 'IFG 68-175'. The photograph was
taken outdoors with indirect lighting. The colors are as nearly
true as is reasonably possible in a color representation of this
type.

DETAILED DESCRIPTION OF THE INVENTION

Throughout this specification, color names beginning with
a small letter signify that the name of that color, as used in
common speech, is aptly descriptive. Color names beginning

US PP21,664 P3

<table>
<tr><td>3</td><td>4</td></tr>
</table>

with a capital letter designate values based upon The R.H.S. Colour Chart, published by The Royal Horitcultural Society, London, England.

Throughout this specification subjective description values conform to those set forth by the International Plant Genetic Resources Institute publication 'Descriptors for Grape' (*Vitis* spp.) (1983) which was developed in collaboration with the Office International de la Vigne et du Vin (OIV) and the International Union for the Protection of New Varieties of Plants (UPOV).

The descriptive matter which follows pertains to 'IFG 68-175' plants grown in the vicinity of Delano, Kern County, Calif. during 2007-2008, and is believed to apply to plants of the variety grown elsewhere under similar soil and climate conditions:

Vine:

*General.*—Size — Medium. Vigor — Vigorous. Density of foliage — Medium. Productivity — Productive. Root stock — Own root. Training method — Typically spur pruned leaving two bud spurs.

*Trunk.*—Trunk diameter of 4-year-old vines at 30 cm above the soil line — 6.8 cm. Shape — Medium. Straps — Short-Split. Surface texture — Medium shaggy with short, loose straps. Inner bark color — 174A.

Shoots:

*Young shoot.*—Form of tip — Wide open. Distribution of anthocyanin coloration of tip — Absent. Intensity of anthocyanin coloration of tip — Absent. Density of prostrate hairs of tip — Sparse. Density of erect hairs on tip — Absent. Color — Yellow green 144A.

*Woody shoot (mature canes).*—Shape — Stocky. Internode length — Long; About 119.8 mm. Width at node — About 12.3 mm. Cross section — Circular. Surface — Smooth. Main color — Reddish brown 166C. Density of erect hairs on nodes — None or very sparse. Density of erect hairs on internodes — None or very sparse. Growth of axillary shoots — Medium; Approximately 11.9 cm.

*Flowering shoot.*—Vigor during flowering — Strong. Attitude during flowering on shoots not tied — Drooping. Color — dorsal side of internodes — Green with Red stripes. Color — ventral side of internodes Green 144A. Color — dorsal side of nodes — Green with Red stripes. Color — ventral side of nodes — Green with Red stripes. Density of prostrate hairs on nodes — None or sparse. Density of erect hairs on nodes — None. Density of prostrate hairs on internodes — None. Density of erect hairs on internode — None. Anthocyanin coloration of buds — Absent.

*Tendrils.*—Distribution on the shoot (at full flowering) — Discontinuous. Length of Tendril — Very long; About 33.5 cm. Thickness — Medium. Color — Yellow green N144A. Form — Trifurcated. Number of consecutive tendrils — 2.

Leaves:

*Young leaves.*—Color of upper surface of first four distal unfolded leaves — Green with bronze spots. Average intensity of anthocyanin coloration of six distal leaves prior to flowering — Medium. Density of prostrate hairs between veins (lower surface) — Absent. Density of prostrate hairs on veins(lower surface) —

Sparse. Density of erect hairs between veins (lower surface) — Absent. Density of erect hairs on veins (lower surface) — Sparse.

*Mature leaves.*—Average length — About 11.8 cm. Width — About 14.0 cm. Mature leaf size — Large. Shape of blade — Cordate. Number of lobes — 5. Anthocyanin coloration of main veins on upper side of blade — Absent. Mature leaf profile — Flat. Blistering surface of blade upper surface — Weak. Leaf blade tip — In the plane of the leaf. Undulation of margin — Slight. Thickness. — Medium — Thin. Undulation of blade between main and lateral veins — Absent. Shape of teeth — Mixture of both sides straight and both sides convex. Length of teeth — Medium. Ratio length/width of teeth — Small. Shape of upper lateral sinuses — Closed. Depth of upper lateral sinuses — Shallow. Shape of base of upper leaf sinuses — V-shaped. Density of prostrate hairs between veins on lower surface of blade — Absent. Density of erect hairs between veins on lower surface of blade — Absent. Density of prostrate hairs on main veins on lower surface of blade — None or very sparse. Density of erect hairs on main veins on lower surface of blade — Sparse. Density of prostrate hairs on main veins on upper surface of blade — Sparse. Density of erect hairs on main veins on upper surface of blade — None. General shape petiole sinus — Closed — Lobes slightly overlapping. Shape of base of petiole sinus — V-shaped. Mature leaf tooth at petiole sinus — Absent.

*Upper surface.*—Color — 146B. Anthocyanin coloration of main veins — Absent. Surface appearance — Semi glossy. Blistering surface of blade — Weak.

*Lower surface.*—Color — 147A. Anthocyanin coloration of main veins (lower surface) — Absent. Glossiness — Weak. Surface texture — Rugose. Surface appearance — Semi-gloss.

*Petiole.*—Length — About 8.6 cm. Length of petiole compared to middle vein — Slightly shorter. Density of prostrate hairs on petiole — None to sparse. Density of erect hairs on petiole — None.

*Buds.*—Bud fruitfulness — Basal: Mostly fruitful. Position of first fruitful shoot on previous season cane — 1st to 2nd node. Time of bud burst — Late, Mar. 8, 2008.

Flowers:

*General.*—Flower sex — Hermaphrodite. Length of first inflorescence — Medium; 24.1 cm long by 15.8 cm wide. Position of first flowering and fruiting node — 4th node (current season growth). Number of inflorescences per flowering shoot — 1.1 to 2. Date of full bloom — May 10, 2007. Time of bloom — Midseason as compared with similar varieties in the growing area of Delano, Calif.

Fruit:

*General.*—Ripening period — Mid — late season; Approximately Aug. 21, 2007. Use — Fresh market. Keeping quality — Excellent. Resistance to — insects: average typical of *Vitis vinifera* species; diseases: average typical of *Vitis vinifera* species. Shipping quality — good. Refractometer test — Solidsugar: About 21.8 Brix. Brix/Acid — About 0.47. Titratable acidity — About 0.47. Juice pH — About 3.61.

US PP21,664 P3

5

*Cluster.*—Mature Cluster length (peduncle excluded) — About 22.2 cm. Mature Cluster width — About 15.0 cm. Mature Cluster weight — About 797 g. Bunch density — Dense requires thinning with gibberellic acid. Number of berries — About 128. Form — Conical.

*Peduncle.*—Length of peduncle — Medium; Approximately 7.2 cm. Lignification of peduncle — Strong.

*Berry.*—Uniformity of size — Uniform. Single berry weight — About 7.0 grams. Shape — Obtuse ovate. Seed — Contains small rudimentary seed traces, occasionally noticeable when eaten. Berry dimensions — longitudinal axis: About 2.5 cm, horizontal axis: About 2.1 cm. Skin color (without bloom) — Red group 46A. Berry firmness — Firm and crisp.

6

Particular flavor — Neutral. Bloom (cuticular wax) — Strong. Berry separation from pedicel — Difficult.

*Skin.*—Thickness — Medium. Texture — Medium. Reticulation — Absent. Tenacity — Tenacious to flesh.

The variety has no particular disease or insect resistance and is similar in susceptibility to other commonly grown *Vitis vinifera* varieties. It requires similar protective measures as required for other common *vinifera* varieties to be grown commercially.

What is claimed is:

**1**. A new and distinct variety of grapevine plant having the characteristics substantially as described and illustrated herein.

\* \* \* \* \*

**U.S. Patent**          Jan. 25, 2011          US PP21,664 P3



Fig. 1

# EXHIBIT 3

# United States of America

## United States Patent and Trademark Office

# SWEET CELEBRATION

**Reg. No. 6,259,217**

**Registered Feb. 02, 2021**

**Int. Cl.: 31**

**Trademark**

**Principal Register**

International Fruit Genetics, LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
8224 Espresso Drive, Suite 200
Bakersfield, CALIFORNIA 93312

CLASS 31: Fresh fruits and vegetables; live plants, namely, live grapevines; live plants and live plant propagating material, namely, live cuttings, live plant tissue, and live plant clones, all for growing live plants and not for scientific, medical, or research purposes

FIRST USE 7-18-2008; IN COMMERCE 9-3-2008

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 3531957

SER. NO. 88-710,640, FILED 11-29-2019





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT 4

